UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL WOOD and JASON WOOD,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>KERN COUNTY CHILD PROTECTIVE SERVICES, et al.,<br><br>　　　　Defendants. | Case No.: 1:14-cv-00472 - --- - JLT<br><br>ORDER DIRECTING THE CLERK OF COURT TO ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFFS' MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING PLAINTIFFS' COMPLAINT WITHOUT LEAVE TO AMEND<br><br>(Doc. 2) |

　　Through a petition to proceed in forma pauperis filed by Krystal Wood, Plaintiffs seek to proceed pro se and in forma pauperis in this action for a violation of civil rights pursuant to 42 U.S.C. § 1983. Because the complaint is barred by the statute of limitations and the other claims are barred by the *Rooker-Feldman* doctring, the Court recommends Ms. Wood's petition to proceed in forma pauperis be **DENIED** and the complaint be **DISMISSED** without leave to amend.

**I.　Motion to Proceed In Forma Pauperis**

　　As a general rule, all parties instituting any civil action, suit or proceeding in a United States District Court must pay a filing fee. 28 U.S.C. § 1914(a). However, the Court may authorize the initiation of an action "without prepayment of fees and costs of security therefor, by a person who submits an affidavit that . . . the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). Thus, an action may proceed without payment of the filing fee only if leave to proceed in

forma pauperis is granted by the Court. *See Rodriguez v. Cook*, 169 F.3d 1178, 1177 (9th Cir. 1999).

The Ninth Circuit has held "permission to proceed in forma pauperis is itself a matter of privilege and not a right; denial of an in forma pauperis status does not violate the applicant's right to due process." *Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir. 1984) (citing *Weller v. Dickson*, 314 F.2d 598, 600 (9th Cir. 1963)). The Court has broad discretion to grant or deny a motion to proceed in forma pauperis. *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990); *Weller,* 314 F.2d at 600-01. In making a determination, the Court "must be careful to avoid construing the statute so narrowly that a litigant is presented with a Hobson's choice between eschewing a potentially meritorious claim or foregoing life's plain necessities." *Temple v. Ellerthorpe*, 586 F.Supp. 848, 850 (D.R.I. 1984).

Here, the Court recommends the motion to proceed in forma pauperis be denied because, as discussed below, Plaintiffs fail to state a cognizable claim upon which relief may be granted. *See* 28 U.S.C.§ 1915(e)(2).

**II.     Screening Requirement**

When an individual seeks to proceed in forma pauperis, the Court is required to review the complaint and identify "cognizable claims." *See* 28 U.S.C § 1915(a)-(b). The Court must dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2). A claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

**III.    Pleading Standards**

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and ... a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must state the elements of the plaintiff's claim in a plain and succinct manner.

*Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to give the defendant fair notice and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court explained,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When factual allegations are well-pled, a court should assume them to be true and determine whether the facts would make the plaintiff entitled to relief; conclusions in the pleading are not entitled to the same assumption of truth. *Id.* The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

**IV.     Section 1983 Claims**

Plaintiffs seeksto proceed in this action under 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Thus, an individual may bring an action for the deprivation of civil rights pursuant to Section 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a cognizable claim under Section 1983, a plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right and (2) a person or entity who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

**V.     Discussion and Analysis**

Krystal Wood asserts that she is the mother of three minors: "C.C.", "A.J.", and "K.C."  (Doc. 1 at 2.)  According to the complaint, Plaintiffs left their children with a babysitter on July 10, 2007, at which time C.C. was three years old, A.J. was two years old, and K.C. was seven months old.  (*Id.* at 2-4.)  She asserts that A.J. fell while in the care of the babysitter, who did not inform the parents of the fall.  (*Id.* at 4.)  Ms. Wood noticed A.J. was crying when she arrived to retrieve the children from the babysitter but "assumed she was tired."  (*Id.*)  Upon arriving home however, Ms. Wood "noticed that [A.J.'s] arm wasn't moving properly" so she "rushed [A.J.] into the hospital," where they learned A.J.'s elbow was fractured.  (*Id.*)

Ms. Wood alleges that after the hospital visit, representatives of Kern County Child Protective Service and Kern County Sheriff's Department "used physical force to gain access into [her] home stating they needed to see the children, and do a search of the home."  (Doc. 1 at 5.)  Further, she reports that she was questioned, background checks were performed on everyone in the home, and she was "later informed… that they would be detaining the children."  (*Id.*)  Plaintiff asserts C.C., A.J., and K.C. were "unlawfully seized… without a warrant or court order."  (*Id.*)  According to Ms. Wood, "Exigent circumstances for removal did not exist as their existed no reasonable basis for believing that [C.C., A.J., and K.C.] were in imminent danger of suffering death or serious bodily injury within the time it would take to obtain a warrant."  (*Id.* at 5-6.)

As a result of the children being detained, Plaintiffs assert that "on July 10, 2007, social worker Jason P. Montez filed three juvenile dependency petitions on behalf of [C.C., A.J., and K.C.]," in which he "falsely alleg[ed] they came within the protection of Welfare and Institutions Code § 300."  (Doc. 1 at 6.)  Plaintiffs assert that Mr. Montez and his co-worker, Jennifer Weissburg, believed that Jason Wood, Plaintiff's live-in boyfriend at the time, harmed the child and she "failed to protect them from serious harm."  (*Id.*)  She alleges Mr. Montez "intentionally suppressed evidence that [C.C., A.J., and

K.C.] were, in fact, not suffering from child abuse, and not in imminent danger of serious physical harm or illness" and that Montez knew at the time he verified the dependency petitions that the information contained in them was false. (*Id.* at 6-7.) Plaintiffs believe Mr. Montez and Ms. Weissburg "fabricated evidence, cast [her] in a false light, and overstated the severity of the purported injuries to [A.J.] in order to gain leverage." (*Id.* at 7.) Plaintiffs allege the social worker's report filed in support of the petitions contained numerous falsities and that Montez acted with malice with the intent to cause them harm. For example, despite Montez's conclusion that the child suffered physical abuse, the medical evidence was contradictory. (Doc. 1 at 5) Hospital personnel opined that the child's injury was days old though Dr. Laven opined that the injury seemed to have been caused by a blow but that there were no other signs of abuse and the injury appeared to be recent. Id.

While in foster care in April 2009, A.C. was injured due to falling out of a bathtub. (Doc. 1 at 8) Plaintiffs complained at that time that they were not given immediate notice of the injury nor were they given a copy of the investigation report. Id. Ms. Woods claims that the failure to provide the investigative report stymied her efforts to defeat the dependency action—though by this time, the dependency action was nearing two years old. Id.

Ms. Woods asserts that during the proceedings, on September 23, 2009, her attorney told her she must testify that Jason Woods caused the injury to the child. (Doc. 1 at 12) Though Ms. Woods wanted her attorney to present the evidence related to the child being injured in foster care, he did not. Id. Likewise, she was not permitted to "speak up in court or I could face going to jail or being removed from the courtroom." Id. As a result of the court proceedings, C.C., A.J., and K.C. were taken from Plaintiffs' care. (*Id.* at 9.) Ms. Woods explains that she was involved in the dependency proceeding for 18 months. (Doc. 1 at 9) Though she had secured a suitable home, the children were not returned to her care because she was financially unstable. Id. Instead, parental rights were terminated and the children were adopted. (Doc. 1 at 9)

On March 15, 2012, Ms. Wood was interviewed by a local TV station related to Child Protective Services and the reporter asked her whether she knew the officials needed a warrant before they could remove the children from Plaintiffs' home. (Doc. 1 at 8, 13) Ms. Wood explains that this is how she learned that the officials acted improperly when they removed the children from her care

without a warrant. Id.  Based upon these facts, Plaintiff brings claims under 42 U.S.C. §1983 for violations of the Fourteenth Amendment.  (*Id.* at 10-15.)

### A. The statute of limitations has run on Plaintiff's claims

Although 42 U.S.C. § 1983 "does not contain its own statute of limitations," the court "borrow[s] the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (citation omitted).  In California, the statute of limitations for personal injury actions is two years, and runs from the date "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *See id.* at 992; *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007).  Consequently, Plaintiff's claims under 42 U.S.C. § 1983 are subject to a two-year statute of limitations. *See, e.g., Qualls v. Regents of the Univ. of Cal.*, 2014 U.S. Dist. LEXIS 46993, at *24-25 (E.D. Cal. Apr. 4, 2014) (citing Cal. Code Civ. Pro. § 335.1) (finding the plaintiff's claims were "subject to a two year limitation period" because the statute of limitations under § 1983 is based upon California's statute of limitations for personal injury claims); *Avery v. Moreno*, 2014 U.S. Dist. LEXIS 12422, at *27-28 (finding the plaintiff's claims under § 1983 were untimely because they were filed beyond the statute of limitations).  Though state law sets forth the length of the statute of limitations period, federal law determines when the action accrues. Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir.2000).

In this case, Plaintiffs argue their complaint is timely though they acknowledge the underlying injuries—entry into Plaintiff's home and seizure of her children without a warrant—occurred on July 10, 2007.  (Doc. 1 at 5.)

In Wallace v. Kato, 549 U.S. 384, 391-392 (2007), the Court considered when the tort of unlawful arrest accrues.  The Court held,

> "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526–527 (1991) (footnote omitted); see also 54 C.J.S., Limitations of Actions § 112, p. 150 (2005). Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.
>
> We conclude that the statute of limitations on petitioner's § 1983 claim commenced to run when he appeared before the examining magistrate and was bound over for trial. Since more than two years elapsed between that date and the filing of this suit—even

leaving out of the count the period before he reached his majority—the action was time barred.

Id. Thus, the cause of action based upon the warrantless removal of the children from Plaintiffs' care accrued once the juvenile court detained the children through legal process.

Here, Ms. Wood explains that the children were removed from her home on July 10, 2007. (Doc. 1 at 5) This occurred via a warrantless seizure of the children and a warrantless entry into her home. Id. Plaintiffs do not set forth the date on which the juvenile court detained the children from the parents, though they must have been detained sometime before April 2009 when they allege the children were residing in foster care. Id. at 8. Even if the outermost date is selected, September 23, 2009—the date on which parental rights were terminated—this date is more than four years before the date of the filing of the complaint. (Doc. 1)

Though Plaintiffs argue that they did not appreciate that the officers needed a warrant to remove the children until March 25, 2012, even this date is more than two years before the complaint was filed. Moreover, of course, the date the statute of limitations began to run was not when Plaintiffs finally learned of the requirements for the lawful removal of the children from their care, it was when they knew the "critical facts" of the injury which is "that [s]he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). Here, when the children were removed from the home, Plaintiffs were aware of the injury—the forced entry into the home and the wrongful removal of the children—and who inflicted the injury—those who entered and removed the children. It is of no moment that Plaintiffs did not know all of the legal theories upon which they contended the entry and removal were wrongful; they knew they had not abused the child and knew that their other children were not at risk of abuse. Thus, the cause of action accrued no later than mid-July 2007[1] and, because the complaint was not filed until April 2, 2014, the statute of limitations has expired.

On the other hand, it is not disputed that at the time the social worker filed the petitions and social work reports, Plaintiffs knew that what was being reported in these documents was false. Thus,

---

[1] Under California's Welfare and Institutions Code section 315 requires the detention hearing to occur, "as soon as possible, but in any event before the expiration of the next judicial day after a petition to declare the minor a dependent child has been filed."

the statute of limitations began running from the time Plaintiffs learned of the content of these documents. Notably, they don't dispute that they were aware that the social worker alleged that they caused the children harm at the time these documents were filed and they knew that they had not done so; to the contrary they allege they were fully aware of the claims being made and vehemently denied the truth of these statements. (Doc. 1 at 4-9) Therefore, they were aware of the injury and who caused it which necessitates the determination that the causes of action based upon this actions are barred by the statute of limitations

Likewise, Plaintiffs admit that they requested but were not given reports related to the injury their child suffered while in foster care. (Doc. 1 at 8) They admit also that they were aware that they had not been notified immediately of the injuries the child suffered. This injury occurred in April 2009 and Plaintiff discovered this while the child was still healing from the injuries and was bruised and had stitches—thus, it was within days or weeks of the injury. Id. Therefore, once again, Plaintiffs were aware of the injury—the failure to provide the notice and the records—and who was at fault—social worker, Jan Wheeler. Id. Thus, once again, the causes of action based upon this event are barred by the statute of limitations.

Finally, Plaintiffs complain that Bakersfield Memorial Hospital and David Riel should be held liable also. (Doc. 1 at 2) The complaint claims David Riel was the physician assistant who "lied" when he made statements to the social worker that the injury was older than the story given by the parents on July 10, 2007. Id. at 4. Thus, it appears that Plaintiffs seek to impose liability on Mr. Riel based upon these statements and to hold the hospital liable based upon the employment relationship. Id. However, clearly, at the time Plaintiffs obtained the social worker's report which detailed the evidence given by David Riel, they were Plaintiffs were aware of the injury—the lies told by Riel and that Bakersfield Memorial Hospital employed him—and who was at fault— Riel and that Bakersfield Memorial Hospital. Id. Thus, once again, the causes of action based upon this event are barred by the statute of limitations.

Because all of the causes of action are time-barred, the complaint should be **DISMISSED.**

### B.     The relief requested may not be granted under the *Rooker-Feldman* Doctrine

Under *the Rooker-Feldman* doctrine, a party may not seek appellate review in federal court of a

decision made by a state court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Ninth Circuit explained,

> Typically, the *Rooker-Feldman* doctrine bars federal courts from exercising subject-matter jurisdiction over a proceeding in which a party losing in state court seeks what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the losers federal rights.

*Doe v. Mann*, 415 F.3d 1038, 1041-42 (9th Cir. 2005); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (the *Rooker-Feldman* doctrine precludes a district court from appellate review of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced . . ."). Accordingly, the district court lacks jurisdiction over "claims . . . 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (citing *Feldman*, 460 U.S. at 483, 485)).

In addition to complaining about the fact the children were removed from their care without a warrant and without exigency, Plaintiffs seem to complain about the fairness of the entire process through which, ultimately, parental rights to the children were terminated by the Kern County Superior Court and through which the children were adopted. However, the *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (internal citations and quotation marks omitted). Consequently, the Court is unable to review the propriety of the juvenile dependency proceedings, the termination of parental rights or the children's ultimate adoption according to the *Rooker-Feldman* doctrine.

## VI.   Conclusion

Because Plaintiffs failed to initiate this action within two years of the injury that forms the basis of the action, the claims are barred by the statute of limitations. *See TwoRivers*, 174 F.3d at 991-92; *Canatella*, 486 F.3d at 1132. Moreover, the claims based upon the wrongfulness of the determinations made in the Kern County Superior Court are barred from review by the District Court under the *Rooker-Feldman* doctrine.

///

**ORDER**

Good cause appearing, the Clerk of Court is **DIRECTED** to assign a United States District Judge to this action.

**FINDINGS AND RECOMMENDATIONS**

Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's request to proceed *in forma pauperis* be **DENIED**;
2. Plaintiffs Complaint be **DISMISSED WITHOUT LEAVE TO AMEND**; and
3. The Clerk of Court be DIRECTED to close the action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 14, 2014**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE